63 A.3d 666

**COVERED BRIDGE FARMS II, LLC, et al.**

v.

**STATE of Maryland, et al.**

**No. 1920, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

March 22, 2013.

Howard L. Alderman, Jr., (Levin & Gann, PA, on the brief), Towson, MD, for Appellant.

Amanda A. Gibson, (Craig A. Nielsen, Douglas F. Gansler, Atty. Gen., on the brief), Annapolis, MD, for Appellee.

Panel: MEREDITH, ZARNOCH, ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

### STATEMENT OF THE CASE

Appellants, Covered Bridge Farms II, LLC, Covered Bridge Farms III, LLC, Covered Bridge Farms IV, LLC (collectively "CBF entities"), and Robert Wayne and Melissa Newsome (collectively the "Newsomes") appeal a judgment of the Circuit Court for Howard County granting summary

judgment and declaratory relief to appellees, the State of Maryland and the Maryland Agricultural Land Preservation Foundation ("MALPF" or the "Foundation"). For the reasons that follow, we affirm the circuit court's rulings.

## FACTS AND LEGAL PROCEEDINGS

Charles G. and Elizabeth S. Grey owned farmland in Howard County. In 1980, the Greys took steps to become part of Maryland's agricultural land preservation program. To be part of the program, the farmland has to meet certain soil and location criteria and be at least 50 acres. Before 2007, the farmland had to be placed first in an Agricultural District.[1] Then, the landowner could sell a land preservation easement to the State. The owner had to sell the State an easement "on the entire contiguous acreage of such agricultural land." COMAR 15.15.01.05A (1979); 6 Md. Reg. 19–21 (Jan. 12, 1979).

An agricultural district was created through a district agreement.[2] The Greys' district agreement required that the owners maintain the property for agricultural use and prohibited the subdivision and development of the land for residential, commercial, or industrial purposes. One exception permitted the landowner to convey one acre or less to himself and to each of his children for construction of a dwelling intended for personal use—a conveyance that could only be done one time for that owner and each child. The agreement stated that the "subject property" contained 131.347 acres, more or less.

---

1. The General Assembly has since eliminated this requirement as a condition for the easement sale application process. *See* Act of May 17, 2007, ch. 650, 2007 Md. Laws 4073. The law terminated "agricultural districts" as of June 30, 2012, except for those districts on which an easement had been conveyed to the Foundation or for districts established by a county for tax credit purposes. *Id.* at 4077. An easement has been conveyed to the Foundation on the district in this case and, therefore, is still in effect.

2. This was a contract between the Foundation and the landowner. The agricultural district became effective upon that recording of the agreement in the local land records and continued in effect unless terminated. COMAR 15.15.01.03G.(1979).

In 1984, the Greys sold an easement to the State. The Deed of Easement states that it is an easement "in, on and over the hereinafter described tract or parcel of land ... that is to say: All those three contiguous parcels of land ... described as follows[.]" Throughout the rest of the deed, the three contiguous parcels are referred to as the "described land." Under covenants, conditions, limitations, and restrictions the deed states, "[s]ubject to the reservations hereinafter contained, the Grantors covenant, grant, and relinquish the following rights: ... [t]he right to subdivide the above described land for any purpose except upon written approval of the Agricultural Land Preservation Foundation[.]"

In 1995, the Greys conveyed the entire land to Kenneth Lee and Maureen Fogarty Williams.[3] The two then conveyed the land to Kenneth Lee Williams individually in 1998. In 2001, Williams conveyed the land to Covered Bridge Farms, LLC. Covered Bridge Farms then reconfigured the three parcels by Deed of Adjoinder Transfer and Deed After Adjoinder Transfer. This changed the parcel lines, the acreage of two of the parcels, and the numbering of the parcels.[4] In 2006, MALPF approved the release of one lot from the easement for a personal residence for Covered Bridge Farm's owners, the Newsomes.

In 2007, Covered Bridge Farms was liquidated and, without requesting MALPF's approval, it conveyed the three reconfigured parcels to three separate entities, namely Covered Bridge Farms II, III, and IV. MALPF filed a complaint against the CBF entities and the Newsomes in 2011. MALPF alleged that the three separate conveyances constituted subdivisions of the land in violation of the deed of easement, the

---

3. The District Agreement provides that it is binding on subsequent heirs, successors and assigns, and the easement states that it runs with the land. *See Maryland Agricultural Land Preservation Foundation v. Claggett*, 412 Md. 45, 64, 985 A.2d 565 (2009).

4. The size of one of the parcels changed from 5.757 acres to 6 acres and another segment was altered from 80.25 acres to 80.07 acres.

district agreement, and Maryland law and regulations. The CBF entities and the Newsomes moved to dismiss the complaint or, in the alternative, for summary judgment. MALPF filed a cross-motion for summary judgment and declaratory relief. The circuit court granted MALPF's cross-motion, finding that the conveyance was a subdivision in violation of the district agreement, the easement, and State regulations; declaring the transfer null and void; requiring the land to be transferred to a common owner; and ordering the lot lines eliminated or restored to their original configuration.

## QUESTIONS PRESENTED

Appellants present two questions for review,[5] which we have consolidated into the following question:

Did the circuit court err in concluding that the transfer of the three reconfigured parcels from Covered Bridge Farms, LLC to the Covered Bridge entities were subdivisions in violation of the District Agreement, the Easement, and applicable State regulations?

For the following reasons, we answer this question in the negative and affirm the judgment of the circuit court.

## STANDARD OF REVIEW

■ We review a declaratory judgment that was entered as the result of the grant of a motion for summary judgment to determine whether that declaration was correct as a matter of law. *Claggett,* 412 Md. at 61, 985 A.2d 565.

## DISCUSSION

We focus on a case that is on all fours with this one. In *Stitzel v. Maryland,* 195 Md.App. 443, 448–52, 6 A.3d 935

---

5. The CBF entities and the Newsomes ask:
 1. Did the Appellants cause a subdivision of the Easement Land by conveying the pre-existing parcels of record that comprise the Easement Land to separate owners?
 2. Are the Foundation's recently adopted agricultural subdivision regulations controlling as to the conveyances of title to separate entities?

(2010), we held that the conveyance of a portion of land that was subjected to an agricultural preservation easement was a subdivision of land even though the land had been separate before becoming part of the Maryland land preservation program. Paul F. Stitzel entered into a district agreement with MALPF in 1999. *Id.* at 445–46, 6 A.3d 935. The agreement placed three separate but adjoining parcels into one agricultural district. *State of Maryland v. Stitzel,* Case No. 21–C–06–25292 DJ, (Circuit Court for Washington County, April 3, 2008). Stitzel then sold an agricultural land preservation easement on all the acreage in the agricultural district to MALPF. *Stitzel,* 195 Md.App. at 446, 6 A.3d 935. In 2005, Stitzel conveyed one of the original parcels to a couple, the Bowers, without consent from MALPF. *Id.* MALPF filed suit against Stitzel for subdividing the land without permission. *Id.* at 447, 6 A.3d 935.

In concluding that this was a subdivision in violation of the district agreement and the easement, we explained first that the district agreement stated that "[t]he landowner agrees not to subdivide the land for any purpose unless the Foundation first has approved the proposed subdivision," and the easement reiterated that "[t]he land subject to this Deed of Easement may not be subdivided for any purpose including subdivision, off conveyance and the movement of boundary lines unless written approval first has been obtained from the [Foundation]." *Id.* at 448, 6 A.3d 935.

In defining subdivision, we agreed with the circuit court that the then-current COMAR regulation provided the best guidance. *Id.* at 449–50, 6 A.3d 935. It defined subdivision as: "the division of land into two or more parts or parcels." COMAR 15.15.01.01–2B(7) (2001), 28 Md. Reg. 1063 (June 1, 2001) (proposed), 28 Md. Reg. 1399–1400 (July 27, 2001) (adopted). The circuit court disagreed with Stitzel's argument that because the parcel was separate before the district agreement and easement it was already subdivided. *Stitzel,* 195 Md.App. at 449–51, 6 A.3d 935. Instead, the circuit court

reasoned that all of the property that was included within the district agreement "should be considered one parcel," as it was sometimes referred to in the documents as the "subject property" or "the land." *Id.* at 449–50, 6 A.3d 935. For more support on this issue, there was deposition testimony in the record from a representative of the Foundation who expressed the view that, "[r]egardless of how many parcels are under easement, it is treated as one unit under easement." *Id.* at 450, 6 A.3d 935. This interpretation was reasonable in light of the evidence in the record that indicated that smaller parcels of land could be less valuable for agricultural uses. *Id.* at 451, 6 A.3d 935. We noted that "the definition of 'subdivision' found in the regulation ... simply contemplates the subtraction of a portion of land within an agricultural district or subject to an easement." *Id.* at 449, 6 A.3d 935. Therefore, we concluded that Stitzel's conveyance was a subdivision. *Id.* at 451, 6 A.3d 935.

 The holding in *Stitzel* controls the outcome of this case. The restriction on the subdivision of the land is found in both the *Stitzel* easement and the easement in this case. Here, the restriction reads: "[s]ubject to the reservations hereinafter contained, the Grantors covenant, grant, and relinquish the following rights: ... [t]he right to subdivide the above described land for any purpose except upon written approval of the Agricultural Land Preservation Foundation[.]" In *Stitzel,* the restriction read: "[t]he land subject to this Deed of Easement may not be subdivided for any purpose including subdivision, off conveyance and the movement of boundary lines unless written approval first has been obtained from the [Foundation]." Although the appellants correctly point out that this restriction does not contain the words "off conveyance" or "movement of boundary lines," the focus in *Stitzel* was on the word subdivision, as it is in this case.[6]

The same COMAR regulation that applied in *Stitzel* applies in this case because it was the regulation in place when both

---

6. The *Stitzel* Court did mention off conveyance, but it did so as a type of subdivision. *Stitzel,* 195 Md.App. at 451–52, 6 A.3d 935.

conveyances occurred. Thus, subdivision means "the division of land into two or more parts or parcels." Appellants argue, just as Stitzel did, that the land was already subdivided before it entered into the agricultural program. But, in this case, just as in *Stitzel*, the district agreement and the easement described the three separate parcels as one "land," one agricultural district. Also similar to *Stitzel*, the district agreement and easement refer to the three parcels as the "subject property" or "the land." Additionally, a Foundation representative stated in an affidavit that

> As a routine matter, the Foundation accepted individual farms into the state agricultural land preservation program that are composed of separately described parcels of land. The Foundation does not require landowners to survey and combine the multiple parcels into one parcel because the great cost of doing so would discourage program participation. However, the Foundation considers the entirety of the multiple parcels covered in the District Agreement or easement as one "land" and one "parcel" subject to the subdivision prohibition that prevents any landowner from chopping up the farm and conveying its pieces or parcels to other owners, thereby destroying the farm's potential as a profitable agricultural unit.

The appellants vigorously contend that the land in this case should not be treated as one parcel because it was described differently than the land in the *Stitzel* case. They argue that the easement in *Stitzel* described the land as a single "agricultural preservation parcel," while the easement in this case described three separate parcels. Looking at the two documents, we can see that this supposed difference is actually not a difference at all. Although one section of the easement in this case describes the three parcels as "all those three contiguous parcels of land," everywhere else in the easement these parcels are described as the "land." Also, in the district agreement related to this case, the three parcels are referred to as the "subject property" and it is noted that the agreement is for the "establishment of an agricultural preservation district." Looking to the *Stitzel* easement, it similarly uses the

terms parcels and land. It sometimes says a "parcel of land," while other times it refers to "Lots 1 thru 4" or Parcel No. 1, 2, and 3. Just as the *Stitzel* Court concluded that there was one unit of land, we similarly conclude that the district agreement and easement in this case created one parcel.

Stitzel conveyed one of the parcels that was separately described in the district agreement to a buyer. Here, the appellants actually reconfigured the three parcels that were part of the agricultural district and sold each parcel to a different entity. Thus, unlike in *Stitzel*, where the property lines were the same as they were before becoming part of an agricultural district, the three parcels in this case were not the same three parcels separately described in the easement. The Court in *Stitzel* determined that the conveyance of a parcel that was separately described in an agricultural district agreement was a subdivision. Thus, conveying three parcels that were not actually the same parcels separately described in the district agreement is clearly a subdivision.

To no avail, appellants continue to argue that this case is distinguishable. They vehemently believe the conveyances in this case are different from the one in *Stitzel* because the parcel in *Stitzel* was improved with a dwelling, the buyers expected to receive the title free of encumbrances, and the parcel, according to appellants, was subtracted from the "operation and effect" of the easement. We disagree. The dwelling and the buyer's feelings were both irrelevant to the Court's analysis in *Stitzel*. Additionally, the land was still subject to the easement. Specifically, the Court explained that the owner removed a portion of land that was still within an agricultural district and subject to the easement. Controlled by our holding in *Stitzel*, we conclude that the conveyances in this case were subdivisions of the agricultural district subject to the easement. Because the conveyances were subdivisions, the sellers needed the Foundation's approval before conveying the parcels to separate buyers.[7]

---

7. The CBF entities and the Newsomes do not challenge the court's remedy for the failure to seek Foundation approval. Therefore, we will not address the issue.

As a final matter, we agree with appellants' contention that the agricultural regulations revised and enacted in 2011 do not apply to this case. Appellants specifically argue that the Foundation improperly tried to rely on three new regulations. First, COMAR 15.15.12.03(B)(7) (2011) changes subdivision to mean "the division of land into two or more parts or parcels. Subdivision includes the lease of any part or parts less than 100 percent of the total parts of the land for a term in excess of 20 years." Second, COMAR 15.15.12.02 (2011) ensures that the entirety "of the land subject to an agricultural land preservation easement acquired by the Foundation is considered to be one parcel of land even if the total acreage comprises separately described parcels or government-assigned tax parcels or accounts." Finally, COMAR 15.15.12.04(A) (2011) provides,

> except as approved by the Foundation as provided by this chapter and in COMAR 15.15.01.17C and 15.15.06.01–.06, a landowner may not subdivide land encumbered by an easement, including the movement of interior boundary lines, or transfer or cause to be transferred, any part or parts separately from the total acreage of the land, voluntarily, involuntarily, by testamentary disposition, or by reason of foreclosure or bankruptcy.

The new language of these regulations is not necessary for the conveyances in this case to be deemed subdivisions. Even without the new language, the conveyances were violations of the former regulations and the deed of easement. In 2007, when the land was conveyed, a subdivision was defined as a "the division of land into two or more parts or parcels." *Stitzel* held, in 2010 before the new regulation language, that land in one agricultural district was considered one parcel even if it originally had been more than one. Thus, the conveyances in this case were subdivisions regardless of the 2011 regulation language because the three parcels became one agricultural district in 1980 and the deed of easement in this case prohibited subdivision of the district without prior approval.

For the reasons discussed, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**